NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
------------------------------------------
MARITA RED,                              :
                                         :
                    Plaintiff,           :      Civ. No. 03-2241 (DRD)
         v.                              :
                                         :
JOHN E. POTTER,                          :      O P I N I O N
POSTMASTER GENERAL,                      :
                                         :
                    Defendant.           :
------------------------------------------
```

Marita Red
34 Gray Street
Jersey City, NJ 07302

*Plaintiff Pro Se*


Christopher J. Christie
United States Attorney
By Andrew Leven
Assistant U.S. Attorney
United States Attorney's Office
970 Broad Street
Newark, NJ 07102

*Attorney for Defendant*


**DEBEVOISE, Senior District Judge**

## I. PROCEDURAL HISTORY

Plaintiff, Marita Red, a former United States Postal Service employee, filed a complaint

with the Equal Employment Opportunity Commission ("EEOC") alleging that her former

1

employer unlawfully discriminated against her when it demoted her from a full-time position to a part-time position and ultimately released her from employment. In a final agency decision issued by the Postal Service, that claim was denied. Following that decision, Plaintiff filed a complaint with this court. Defendant now moves for summary judgment.

## II.  FACTUAL BACKGROUND

Plaintiff, a native Filipino, began working for the United States Postal Service ("USPS") as a mail handler on November 22, 1997. Thereafter, Plaintiff requested and received a transfer to the "clerk craft." Under the collective bargaining agreement between the USPS and the American Postal Workers Union, when an employee is "reassigned to the Clerk Craft from another craft, the employee shall be assigned to the bottom of the part-time flexible roll and begin a new period of seniority . . . ." Due to an administrative error, Plaintiff's seniority period did not begin anew when she was reassigned. As a result, Plaintiff was mistakenly made a full-time regular clerk in July of 2000. Four days after the assignment, the mistake was corrected and Plaintiff's status was adjusted back to that of part-time flexible clerk.

Prior to this incident, Plaintiff was having difficulty fulfilling her duties as a clerk. One of the requirements for that job is the capacity to lift up to seventy pounds. Although some of the facts regarding this issue are in dispute, it is clear from the record that Plaintiff felt she could not lift such a heavy load. Several times, Plaintiff sought a "light duty" assignment. She also submitted notes from her personal physician stating that she could not lift more than ten pounds.

In response, the USPS had Plaintiff examined by three different doctors. First, Plaintiff was examined by the Postal Service Medical Officer, Dr. Hayes. That doctor found Plaintiff to be fit for regular duty with no restrictions. Plaintiff was then examined by Dr. Canario, an

orthopedist. That doctor also found Plaintiff to be fit for regular duty with no restrictions. Finally, as required by the collective bargaining agreement, Plaintiff was sent for an examination by a third party doctor with whom Plaintiff and the USPS mutually agreed to consult. That doctor also found Plaintiff medically able to perform her regular duties without limitation.

Based on those opinions, the USPS found Plaintiff fit for regular duty and refused to grant her a light duty assignment, which is reserved for employees with injuries and special conditions. Instead, USPS representatives met with Plaintiff and a union representative on or about May 8, 2000 and decided to impose a "work hardening program" in which Plaintiff would be allowed to perform lighter work at the beginning, with no lifting over twenty pounds, and gradually increase her workload over a period of approximately six months, after which she would resume her regular duties.

On August 23, 2000, Plaintiff's personal physician once again provided her with a note stating that she could not perform her regular duties. Defendant claims that Plaintiff then refused to continue participating in the program and told her supervisor she could not lift more than ten pounds. Plaintiff claims she never refused to complete the program but was forced to sign a document to that effect. On September 11, 2000, Plaintiff was served with a Notice of Removal for failure to perform the duties required by her position.

Plaintiff filed the underlying EEO complaint on December 15, 2000. In that complaint, Plaintiff alleged that she was discriminated against on July 19, 2000 when, four days after she was made a full-time clerk, she was relegated to her prior status of part-time flexible clerk. Plaintiff claimed that action was due in part to her race and also attributable to her prior EEO activity. Plaintiff had filed two prior EEO complaints. The first, filed on February 24, 1999,

3

against her then supervisor, Rose Bailey, was dismissed for failure to state a claim. The second, filed on June 10, 1999, also against Rose Bailey, was settled such that Plaintiff received eight hours of work credit. The underlying complaint in this action was filed against Patricia Johnson but Plaintiff later identified her most recent supervisor, Carmen G. Olivera, as the official who discriminated against her by having her terminated. Plaintiff does not mention her termination in the December 15, 2000 EEO complaint but it was considered in the administrative investigation nonetheless. It will be considered here as well.

In addition to the July 19 incident and her termination, Plaintiff lists several additional allegations in her complaint to this court. Those acts occurred on August 24, 2000 when Plaintiff was allegedly "deni[ed] . . . light-duty work, not allowed to go to [her] locker, not allowed inside the building, deni[ed] . . . sick leave, [and] deni[ed] . . . [her] rights of employment." In the brief she filed to oppose this motion, Plaintiff lists forty four additional discriminatory acts she claims occurred between February of 1999 and September of 2000, including various claims of harassment and denial of light-duty work.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law, Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment, Id. In deciding whether there is a disputed issue of material

fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor,'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999), quoting, Anderson, 477 U.S. at 255. But where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (U.S. 1986).

## IV. DISCUSSION

In Title VII claims, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination, Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant employer to articulate some legitimate, non-discriminatory reason for the adverse employment action, Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 (3d Cir. 1996). Thereafter, the burden shifts back to the plaintiff "to produce some evidence from which a reasonable factfinder could conclude either that the [employer's] proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination," Bray v. Marriott Hotels, 110 F.3d 986, 990(3d Cir. 1997); *see also* Sheridan, 100 F.3d at 1072 (on a motion for summary judgment "[t]he district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible"). A plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder could find them 'unworthy of credence,'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

In the present case, Plaintiff claims she suffered racial discrimination and retaliation for prior EEO activity with regard to two events: first, when she was relegated to part-time status and second, when she was terminated. To establish a prima facie case for racial discrimination a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position in question, and (3) nonmembers of the protected class were treated more favorably, Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).

As Plaintiff is a native Filipino, there is no question that she is a member of a protected class. However, Plaintiff has not shown that she was qualified for the positions in question. Regarding her first claim, the demotion, Defendant has presented unrebutted evidence that Plaintiff's promotion to that position was an administrative error that was corrected within a matter of days. Plaintiff was not qualified for the promotion because she did not meet the requirements laid out in the collective bargaining agreement. Plaintiff has provided no evidence to the contrary and no reasonable jury could conclude that she was qualified for the promotion.

Regarding Plaintiff's termination, Defendant has provided substantial evidence that Plaintiff was not performing those functions required by her regular position. Furthermore, the three examining doctors found no medical reason why Plaintiff should be assigned to light duty work. Despite Defendant's attempt to foster Plaintiff's capabilities through the work hardening program, Plaintiff remained unable to perform her duties and was therefore not qualified to continue her employment. No reasonable jury could conclude otherwise.

Plaintiff also fails to satisfy the third element of her prima facie case as she is unable to

identify similarly situated employees who were treated more favorably. Although she names several employees during her deposition, it is clear that she does not know any specifics about when those employees were hired, their seniority status, their medical conditions, etc. (Red Dep. 61:7-68:3 and 87:2-94:3.) Plaintiff provides no other evidence that similarly situated employees were treated more favorably. Thus, she has not established a prima facie case for racial discrimination.

To establish a prima facie case for retaliation, "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action," Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). In this case, there is no question that Plaintiff engaged in protected activity when she filed her prior EEO complaints. Those complaints were filed on February 24, 1999 and June 10, 1999. The adverse employment actions of which Plaintiff complains occurred on July 19, 2000 and September 11, 2000. Thus, Plaintiff has satisfied the second element in proving her prima facie case.

However, "the mere fact that [an] adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events," Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997). Close temporal proximity may support an inference of retaliatory motive but courts have warned that timing alone is not enough to establish a causal link, Prince v. Howmet Corp., 2005 U.S. Dist. LEXIS 16035 (D.N.J. 2005). Here, the adverse actions occurred more than one year after Plaintiff filed her prior EEO complaints. Thus, the timing does not suggest any relationship

between Plaintiff's activities and her employer's actions.

Furthermore, Patricia Johnson and Carmen Olivera, the two supervisors who are responsible for Plaintiff's demotion and termination, have both testified that they were unaware of Plaintiff's prior EEO complaints. This testimony is undisputed and Plaintiff has failed to provide any other evidence of a causal relationship between her protected activity and the adverse actions taken against her. As such, Plaintiff has failed to establish a prima facie case of retaliation.

Even if Plaintiff had established a prima facie case for race discrimination or retaliation, her claims would nonetheless fail because Defendant has provided legitimate, non-discriminatory reasons for both the demotion and termination. As discussed above, Defendant has shown that Plaintiff was demoted in order to correct an administrative error. Under the collective bargaining agreement between the USPS and the union, Plaintiff should never have been promoted in the first place. Regarding her termination, Plaintiff was not performing the required duties of her position. Defendant made a considerable effort to determine Plaintiff's capabilities by having her examined by three different doctors. Defendant then developed a program to help Plaintiff gradually assume a greater workload over a period of six months until she reached full capacity. But Plaintiff failed to complete that program and has offered no credible justification for not resuming her regular duties. Therefore, Defendant has demonstrated legitimate, non-discriminatory reasons for both adverse actions. Plaintiff has not produced any other evidence from which a reasonable factfinder could conclude that Defendant's justifications are incredible. Thus, even if Plaintiff had established a prima facie case for either claim, those claims would fail because Defendant has provided legitimate reasons for the adverse actions.

In addition to her motion and termination, Plaintiff now alleges many incidents of discrimination that were not raised in her complaint to the EEOC.  In general, a plaintiff is required to raise all claims with the EEOC prior to filing a claim with this court.  Under 29 C.F.R. § 1614.105, "persons who believe they have been discriminated against" must first attempt to resolve the matter informally by consulting with a counselor.  The purpose of this statutory scheme is to "resolve disputes by informal conciliation, prior to litigation," <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 93 (3d Cir. 1999).  As such, "suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle," <u>Id.</u>

However, factual allegations that were not alleged at the agency level may be asserted in the district court if they are within the scope of a prior EEO complaint or the investigation which arose out of it,  <u>Waiters v. Parsons</u>, 729 F.2d 233, 235 (3d Cir. 1984).  New claims should be allowed where the administrative agency had notice of the claims, i.e., where the allegations can reasonably be expected to grow out of the initial charge of discrimination, <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 398 (3d Cir. 1976).

Plaintiff now alleges more than forty additional acts of discrimination that were not raised in her complaint to the EEOC.  Those allegations include various acts of harassment such as being reprimanded, not being allowed to go to her locker, being made to work in areas that were dusty and noisy, being denied sick leave and being denied light-duty work.

Although such acts might sometimes be within the scope of claims for racial discrimination and retaliation, that is not true in this case.  In her underlying EEO complaint, Plaintiff never claimed that she was harassed or subjected to a hostile work environment.  Rather, she alleged discrimination with regard to one specific incident: her demotion from full-time

9

regular status to part-time flexible status. As the investigation revealed a legitimate, non-discriminatory, and rather obvious reason for Plaintiff's demotion, the agency had no reason to suspect a pattern of harassment. With no notice that such claims would be filed, the agency was denied the opportunity to settle those claims at the administrative level. Thus, Plaintiff is barred from raising those claims here.

## V.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment will be granted. The court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:          October 12, 2005